**Fill in this information to identify the case:**

Debtor Name _Field of Flowers,Inc._

United States Bankruptcy Court for the: _Southern_    District of _Florida_
(State)

Case number: _20-17423-PDR_

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11      02/20

| Field of Flowers, Inc.'s | Plan of Reorganization, Dated _September 14, 2020_ |

[If this plan is for a small business debtor under Subchapter V, 11 U.S.C. § 1190 requires that it include "(A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization." The Background section below may be used for that purpose. Otherwise, the Background section can be deleted from the form, and the Plan can start with "Article 1: Summary"]

**Background for Cases Filed Under Subchapter V**

### A. Description and History of the Debtor's Business

The Debtor is a Florida Corporation. Since December 27, 1989, the Debtor has been in the business of retail and wholesale flower and plant sales. The Debtor operates retail locations in Davie, Florida and Boca Raton, Florida.  The Debtor's storage distribution center and corporate offices are at its Davie location at 5123 S. University Drive, Davie Florida. The Debtor also conducts a substantial home and commercial delivery operation and services special events (weddings, parties etc.)

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit "A".

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as Exhibit  "B".

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $487,602. $222,189 of which will be disbursed to allowed unsecured creditors, $231,103 to secured creditors and $36,801 to the Florida Department of Revenue. The final Plan payment is expected to be paid on December 1, 2023.

The assumptions made in the projections are in accordance with past experience, but accounting for the  changed retrial environment caused by Covid-19 and adjusted for cost reductions reasonably made due to the changed environment .
**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

Debtor Name_____     Case number_____

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Field of Flowers (the *Debtor*) from cash flow from operations.

This Plan provides for:

| | |
|---|---|
| 1 | classes of priority claims; |
| 2 | classes of secured claims; |
| 2 | classes of non-priority unsecured clams; and |
| 1 | classes of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **12** cents on the dollar, <u>however</u>, in the event the PPP loan obtained by the Debtor from JP Morgan Chase pre- petition in the amount of $551,839.56(which has been expended as required for purposes of forgiveness of indebtedness) is forgiven pursuant to the applicable federal laws  and the claim accordingly is not allowed( to the extent forgiven), Debtor estimates the allowed non -priority unsecured creditors will receive approximately **27** cents on the dollar. This Plan also provides for payment of an unsecured convenience class of claims of $1,500.00 or less (14 claims totaling $11,128.74) with such allowed unsecured non-priority creditors to receive **27** cents on the dollar on  their respective claims on the Effective Date in full satisfaction of such claims.   This Plan also provides for the payment of administrative and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

2.01  **Class 1**......................................All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)).

Florida Department of Revenue

2.02  **Class 2**......................................The claim of ⎿ American Express National Bank ⏋, to the extent allowed as a secured claim under § 506 of the Code.

2.03  **Class 3**.....................     The claim of ONDECK Capital Inc.to the extent allowed as a secured claim under section 506 of the Code

2.04  **Class 4**          All non-priority unsecured claims allowed under § 502 of the Code in excess of $1,500.00.

2.05  **Class 5**          All non-priority  unsecured claims allowed under 502 of the Code $1,500.00 or less.(Convenience class)

2.06  **Class 6** ..............................Equity interests of the Debtor.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01  **Unclassified claims**          Under section § 1123(a)(1), administrative expense claims,  and priority tax claims are not in classes.

3.02  **Administrative expense claims**          Each holder of an administrative expense claim allowed under § 503 of the Code,  will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Debtor Name_____     Case number_____

| 3.03 | Priority tax claims | Each holder of a priority tax claim will be paid deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim. |
|---|---|---|
| 3.04 | Statutory fees | All fees, if any, required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. **Quarterly US Trustee fees are not paid in subchapter V Chapter 11 cases**. |
| 3.05 | Prospective quarterly fees | NOT APPLICABLE IN THIS SUBCHAPTER V PLAN. |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority claims excluding those in Article 3 | ☐ Impaired ☐ Unimpaired | Class 1 is impaired by this Plan, and The Florida Department of Revenue Class 1 Priority Claim will be paid monthly over 36 months in $1,022.25 monthly installments |
| Class 2 – Secured claim of [American Express National Bank | ☐ Impaired ☐ Unimpaired ☐ ☐ | American Express National Bank shall be paid the allowed claim amount of $128,194.09 over three years at the TILL rate of 2% payable in 36 monthly installments in the amount of $3,671.01 commencing on the Effective date totaling $132,185. |
| Class 3-Secured Claim of OnDeck Captial; Inc. | ☐ ☐ Impaired ☐ Unimpaired | OnDeck shall be paid the allowed secured portion of its claim amount $95,931.67 over three years at the TILL rate of 2% payable in 36 monthly installments in the amount of $2,747.73 commencing on the Effective date totaling $98,918.00. |
| Class 4 – Non-priority unsecured creditors | ☐ Impaired ☐ Unimpaired | Class 4 allowed Non priority Unsecured creditors shall receive pro rata quarterly payments of $13,104.25 by check from the reorganized debtor for 4 quarters commencing on the Effective date, quarterly payments of $14,284.95 in quarters 5 through 8, and quarterly payments of $28,158.29 in quarters 9 through 12. |
| Class 5-Non-priority Unsecured creditor $1,500 or less | ☐ Impaired ☐ Unimpaired | Class 5 allowed non-party creditors with allowed claims of $1,500 or less shall receive a pro rata distribution totaling 27 cents on the dollar on the Effective date(the total distribution is estimated to be $3,004.75 to satisfy the convenience class claims) |
| Class 6 - Equity security holders of the Debtor | ☐ Impaired ☐ Unimpaired | Equity security holders shall receive no distribution under the Plan but shall maintain the same equity interest owned by such equity security holder at the time the chapter 11 case was filed as set forth in the Schedules |

### Article 5: Allowance and Disallowance of Claims

Debtor Name_____    Case number_____

**5.01  Disputed claim**

A *disputed claim* is a claim that has not been allowed or disallowed [by a final non- appealable order], and as to which either:

(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection;  or

(ii)  no proof of claim has been filed, and the Debtor has scheduled such claim as <u>disputed, contingent, or unliquidated</u>

**5.02 Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non appealable order.

**5.03 Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article 6: Provisions for Executory Contracts and Unexpired Leases**

**6.01 Assumed executory contracts and unexpired leases**

(a)  The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

The Debtor is assuming its   Leases as to its Boca Raton location with the Landlord, Investments Limited as agent for Glades-Pike Investors, LLC as well as its  Davie location with its Landlord  Transamerican Land Corp.. Such leases are being assumed pursuant to  court order after notice and hearing.  All other leases listed in Schedule G are assumed pursuant to this Plan.

(b)  Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 20 days after the date of the order confirming this Plan.

Debtor Name_____    Case number_____

## Article 7: Means for Implementation of the Plan

The Debtor shall fund the plan from its revenues received from the sale of flowers/plants at its store locations and delivery services as well as special events   which pursuant to its projections is sufficient to pay the plan payments on a timely basis.

The Board of Directors shall consist of the same persons who were on the Board at the time the chapter 11 case was filed Donn F. Flipse, Chairman, President, CEO; Donn Kim Flipse, Director, Secretary; Ellen Decareau, Director, Asst. Treasurer; Diana C. Flipse, Director, Asst Secretary; , Aly Thompson, Director.  The Officers shall continue in the same positions they occupied at the time of the filing of the petition and through out the Chapter 11 case- Donn Flipse- President, Chairman and CEO, Clara Duarte- VP,COO. ; Donn Kim Flipse, Director, Secretary; Ellen Decareau, Director, Asst. Treasurer; Diana C. Flipse, Director, Asst Secretary.

## Article 8: General Provisions

**8.01   Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

[Insert additional definitions if necessary].

**8.02   Effective date**

The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**8.03   Severability**

If any provision in this plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative fact of any other provision of this Plan.

**8.04   Binding effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.05   Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06  Controlling effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida  govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**[8.07  Corporate governance**

Corporate Governance shall be consistent with Florida Law.

Debtor Name_____    Case number_____

[8.08 **Retention of
Jurisdiction**

**Article XIII-**

**Retention of Jurisdiction by the Bankruptcy Court**

The Bankruptcy Court shall retain jurisdiction of these proceedings after Confirmation for the following purposes:

a. To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

b. To enable the Debtor to consummate any and all proceedings that it any bring prior to the entry of the Confirmation Order;

c. To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

d. To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

e. To determine the validity, extent and priority of all liens, if any, against property of the Estate;

f. To determine any assertions or an ownership interest in, the value of, or title to, any property of the Estate;

g. To determine any objections to Administrative Claims.

h. To determine any(i) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court by the Debtor or the Reorganized Debtor;

i. Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

j. To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

k. To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

l. To determine any tax liability of the estate in connection with the Plan, action taken, distributions or transfers made thereunder;

m To enforce any and all injunctions created pursuant to the terms of the Plan.

n. To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

o.  To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

p. To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

Debtor Name_____    Case number_____

**Article 9: Discharge**

_____

___

**Discharge of the Debtor as a corporation under Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:
> (i) imposed by this Plan; or
> (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:
> (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
> (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure

**Article 10: Other Provisions**

## <u>MODIFICATIONS TO THE PLAN</u>

The Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date without leave of the Bankruptcy Court. After the Confirmation Date parties-in-interest may, with Bankruptcy Court approval and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan.

Debtor Name _____                    Case number _____

## AMENDMENT OF CLAIMS

Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation Date without leave of the Bankruptcy Court.

## NO RECOVERY CLAIMS

Debtor has analyzed potential preference and fraudulent transfer claims and does not believe the pursuit of such claims would materially benefit the estate.

## OTHER PROVISIONS

It is estimated that Gamberg & Abrams will be owed approximately $50,000.00 at the time of the confirmation and Maria Yip, Sub Chapter V Trustee will be owed approximately $7,500.00, which shall be paid at confirmation, subject to Application to the Court and approval by the Court after notice and hearing. To the extent there is insufficient cash on hand to pay Gamberg & Abrams and Maria Yip at confirmation, they may accept payments on the balance owed to them subsequent to confirmation of the Plan.

This Court shall have authority to temporarily close this case and reopen same without Debtor paying a case reopening fee subject to notice, hearing and court approval.

Aside from the initial payments on the Effective Date which shall be made by the Debtor's Counsel, the Debtor will make the  payments under the Plan unless otherwise ordered by the Court

Dated: September 14, 2020                    Respectfully submitted,

Field of Flowers, Inc.

By: _____
Donn F. Flipse, President

By: _____
Thomas L. Abrams, Attorney for Debtor

Debtor Name_____    Case number_____

Exhibit "A" – Liquidation Analysis

*Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $14,861.29 |
| b. | Accounts receivable | $56,646.26 |
| c. | Inventory | $66,665.12 |
| d. | Office furniture & equipment | $6,600 |
| e. | Machinery & equipment | $15,000 |
| f. | Automobiles | $62,0001.00 |
| g. | Building & Land | $0 |
| h. | Customer list | $0 |
| i. | Investment property  (such as stocks, bonds or other financial assets) | $0 |
| j. | Lawsuits or other claims against third-parties | $0 |
| k. | Other intangibles (such as domain names) | $5,000 |

|  |  |
|---|---|
| ***Total Assets at Liquidation Value*** | **$226,722.67** |

**Less:**
| | |
|---|---|
| Secured creditors= recoveries* | **$226,772.67** |

**Less:**
| | |
|---|---|
| Chapter 7 trustee fees and expenses | $50,000 |

**Less:**
| | |
|---|---|
| Chapter 11 administrative expenses | $75,000 |

**Less:**
| | |
|---|---|
| Priority claims, excluding administrative expense claims | $ |

**[Less:**
| | |
|---|---|
| Debtor=s claimed exemptions] | $ n/a |

| | |
|---|---|
| (1) Balance for unsecured claims in Chapter 7 | **$0** |
| (2) Total dollar amount of unsecured claims | $1,850,000.00* |

| | |
|---|---|
| *Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation*: | $0 |

| | |
|---|---|
| *Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:* | 12% or 27% (depending on forgiveness of PPP loan to JP Morgan Chase and corresponding objection to claim sustained) |

There was $137,428.29 in PPP funds which were segregated funds, required to be utilized for payroll and rent

*This includes undersecured claim of  ONDECK Capital, Inc. And Celtic Bank ( Kabbage)( unsecured)

**Exhibit "A"** – Cash on hand on the effective date of the Plan (Estimated)

| | |
|---|---|
| **Cash on hand on effective date of the Plan**: | $185,000 |

*Less B*

| | |
|---|---|
| Amount of administrative expenses payable on effective date of the Plan.[1] | -  $75,000 |
| Amount of statutory costs and charges | -0 |
| Amount of cure payments for executory contracts | -0_____ [2] |
| Other Plan Payments due on effective date of the Plan | -  $22,603.34 |
| Balance after paying these amounts............... | $87,396.66 |

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | |
|---|---|
| $185,000 | Cash in Debtor's bank account now |
| $ NONE | Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan. |
| $185,000 | Total [This number should match "cash on hand" figure noted above |

---

[1] Administrative claimants will agree to alternative treatment to be paid in future to extent necessary to confirm Plan.
[2] The cure for the Boca Landlord, Glades-Pike Investors, LLC of $40,000.00 is being paid in 24 monthly installments of $1,666.66 together with the monthly lease payments pursuant to the Fourth Amendment to the Lease subject to pending approval of the Court

## EXHIBIT "B"

Projected Financials

|  | Projected Income to Debtor | Projected Expenses & Plan Payments |
|---|---|---|
| Year One: commencing December 1, 2020-November 30, 2021 | $6,298,458 | $6,298,458 |
| Year Two: commencing December 1, 2021-November 30, 2022 | $7,054,284 | $7,054,284 |
| Year One: commencing December 1, 2022-November 30, 2023 | $7,477,541 | $7,477,541 |

**\*See attached Ex. B-1** for Current Estimated Expenses and Revenues:

### YEAR 1-December 2020-November 2021 Income & Expenses

Based on no change from current projections

### YEAR 2-December 2021-November 2022 Income & Expenses

The income for Year 2 is projected to increase by approximately 12% and expenses to increase by approximately 12.5 %.

### YEAR 3-December 2022-November 2023 Income & Expenses

The income is expected to increase by 6 % for year 3 and expenses for Year 3 are anticipated to 4.5%.

**THREE YEAR FINANCIAL PROJECTION FOR FIELD OF FLOWERS**

| | Year 1 | | Year 2 | | Year 3 | | |
|---|---|---|---|---|---|---|---|
| | Dec. 2020-Nov. 2021 | % of Income | Dec. 2021-Nov. 2022 | % of Income | Dec. 2022-Nov. 2023 | % of Income | Total of 3 Years |
| TOTAL INCOME | $6,298,468 | 100.0% | $7,054,284 | 100.0% | $7,477,541 | 100.0% | |
| COST OF GOODS SOLD | $2,884,698 | 45.8% | $3,230,862 | 45.8% | $3,424,714 | 45.8% | |
| DIRECT LABOR | $598,354 | 9.5% | $670,157 | 9.5% | $710,366 | 9.5% | |
| TOTAL DIRECT COSTS | $3,483,053 | 55.3% | $3,901,019 | 55.3% | $4,135,080 | 55.3% | |
| GROSS PROFIT | $2,815,415 | 44.7% | $3,153,265 | 44.7% | $3,342,461 | 44.7% | |
| SELLING LABOR | $692,831 | 11.0% | $775,971 | 11.0% | $822,529 | 11.0% | |
| DELIVERY EXPENSE | $662,967 | 10.5% | $728,723 | 10.3% | $765,546 | 10.2% | |
| SALES TRANSACTION  EXPENSE | $125,969 | 2.0% | $141,086 | 2.0% | $149,551 | 2.0% | |
| ADVERTISING & PROMOTION EXPENSE | $24,000 | 0.4% | $36,000 | 0.5% | $48,000 | 0.6% | |
| TOTAL SELLING EXPENSE | $1,505,767 | 23.9% | $1,681,780 | 23.8% | $1,785,626 | 23.9% | |
| OCCUPANCY EXPENSE | $574,760 | 9.1% | $706,675 | 10.0% | $692,010 | 9.3% | |
| CORPORATE LABOR | $420,000 | 6.7% | $445,200 | 6.3% | $489,720 | 6.5% | |
| OTHER OPERATING EXPENSE | $172,269 | 2.7% | $172,269 | 2.4% | $172,269 | 2.3% | |
| TOTAL OPERATING EXPENSE | $1,167,029 | 18.5% | $1,324,144 | 21.0% | $1,353,999 | 21.5% | |
| TOTAL EXPENSE | $2,672,796 | 42.4% | $3,005,923 | 47.7% | $3,139,625 | 49.8% | |
| NET DISPOSABLE INCOME | $142,619 | 2.3% | $147,342 | 2.3% | $202,836 | 3.2% | |
| PAYMENT TO SECURED CREDITORS | $77,935 | 1.2% | $77,935 | 1.2% | $77,935 | 1.2% | |
| PAYMENT OF FEB. 2020 SALES TAX | $12,267 | 0.2% | $12,267 | 0.2% | $12,267 | 0.2% | |
| PAYMENT TO UNSECURED CREDITORS | $52,417 | 0.8% | $57,139 | 0.9% | $112,633 | 1.8% | $222,189 |



PENGAD 800-631-6989

EXHIBIT

B-1